Victoria ELKINS, et al., Plaintiffs,

v.

AMERICAN SHOWA, INC., Defendant.

No. 1:99–CV–00988–HJW–JS.

United States District Court,
S.D. Ohio,
Western Division.

June 4, 2002.

Anita Kartalopoulos, Kirk Chapman, Barry A. Weprin, Milberg, Weiss, Bershad, Hynes & Lerach LLP, New York City, Dana E. Deering, Lisa L. Cogan, Rene B. Heinrich, Parry Deering Futscher & Sparks—1, Covington, KY, Diane Bradley, Leeds Morelli & Brown—1, Washington, DC, Moses Garcia, Lilley & Garcia—1, Denver, CO, Ronald Richard Parry, Parry, Deering, Futscher & Sparks PSC, Covington, KY, Sharon A. Kornman, Wilmington, OH, for Plaintiffs.

Daniel Jerome Buckley, Vorys Sater Seymour & Pease—1, Scott A. Carroll, Vorys, Sater, Seymour & Pease LLP, Cincinnati, OH, for Defendant.

### *ORDER*

HERMAN J. WEBER, Senior District Judge.

This matter is before the Court upon plaintiffs' motion to certify a class (doc. 47), defendant's opposing memorandum filed under seal (doc. 75), plaintiffs' proposed findings of fact and conclusions of law in support of the motion to certify a class highlighted by defendant (doc. 94), defendant's proposed findings of fact and conclusions of law highlight-

ed by plaintiff (doc. 102), and plaintiff's reply memorandum (doc. 103). Also pending before the Court is defendant's motion for a view of its plant by the Court (doc. 79).

## I. Introduction

Plaintiffs filed this action on November 24, 1999. They move the Court to certify this action as a class action under Fed.R.Civ.P. 23. They allege that the action is properly brought under Rule 23(b)(2) and (b)(3). The proposed class consists of "all women who worked at defendant's Blanchester, Ohio facility at any time from January 1, 1994 to the present," excluding officers and directors of the company (Motion for class certification, doc. 47, p. 2). The five named plaintiffs are Ramona Jean Coleman, Victoria NMN Elkins, Holly Lewis, Patricia Sue Sandlin, and Melissa Straight.[1] Plaintiffs bring the following claims for relief: (1) Discrimination on the Basis of Sex in violation of Title VII of the Civil Rights Act–Hostile Work Environment; (2) Discrimination on the Basis of Sex in violation of Title VII of the Civil Rights Act–Terms and Conditions of Employment; (3) Violation of Title VII of the Civil Rights Act–Retaliation for Exercise of Protected Rights; and (4) Discrimination on the Basis of Sex in Violation of the Ohio Civil Rights Law. As relief, plaintiffs seek an order certifying the lawsuit as a class action; a permanent injunction enjoining defendant from continuing its discriminatory and unlawful practices; all compensatory and punitive damages permitted by federal and Ohio state law; and for such other and further relief as the court deems appropriate. Specifically, plaintiffs seek injunctive relief on behalf of the entire class requiring defendant to implement and enforce a policy for the prevention of sexual harassment and any other forms of discrimination based on sex, impose substantial discipline such as suspension without pay, demotion or termination upon any supervisor of manager who engages in sexual harassment or sex discrimination or permits it to occur in areas or among employees under his supervision or who retaliates against anyone who complains of same, revise defendants' supervisory appraisal process to include performance evaluations for the handling of equal employment opportunity issues, and provide sexual harassment training to all employees.

The Court held an evidentiary hearing on the motion for class certification on March 7 and 8, 2002. The parties presented the testimony of witnesses, offered exhibits, and presented oral arguments. The Court took the matter under submission following the hearing.

## II. Plaintiffs' arguments in support of class certification

Plaintiffs allege that the class consists of hundreds and perhaps thousands of persons so that joinder of all members is impracticable; there are questions of law or fact common to the class which predominate over any questions affecting only individual members regarding the severity and pervasiveness of the environment, defendant's knowledge of the environment, and defendant's failure to take reasonable steps to prevent plant-wide harassment; the claims asserted are typical of the claims of the class; plaintiffs will fairly and adequately protect the interests of the class and have retained counsel experienced in class action and complex litigation, including sexual harassment litigation; defendant has refused to act on grounds generally applicable to the class in that it has failed to take reasonable steps to prevent class-wide sexual harassment; and final injunctive and other equitable relief is appropriate for the entire class.

Plaintiffs also contend that a class action is superior to other available methods since absent class members have no substantial interest in the prosecution of individual actions given the size of the individual claims, the expense of litigating those claims, and the potential for retaliation; defendant's liability can be adjudicated on a class-wide basis; a class action will result in an orderly and expeditious administration of the class and insure uniformity of decisions; other

---

1. The parties refer to twelve class plaintiffs in their filings. However, the complaint names only six plaintiffs, one of whom has been dismissed from the lawsuit. Plaintiffs claimed in their motion for class certification that by separate motion dated July 30, 2001, seven additional women were moving to intervene in the action. To date, no motion to intervene has been filed.

available means of adjudicating the claims are impracticable and inefficient; class members will continue to suffer damages without a class action; and this action presents no difficulties that would impede management of it as a class action.

Plaintiffs allege that even if the "predominance" or "superiority" requirements of Rule 23(b)(3) have not been met, the Court should certify a class under Rule 23(b)(2) with respect to their claims for injunctive relief. Plaintiffs assert that the Court could find that certification is appropriate on the question of whether defendant's plant was a hostile environment for women and then, in a second stage, allow individual women employees to demonstrate that they suffered personal loss.

## III. Defendant's arguments in opposition to class certification

In opposition to the motion to certify a class, defendant alleges that plaintiffs cannot satisfy the prerequisites of Rule 23(a) because the named plaintiffs are not adequate class representatives. Specifically, defendant contends that the claims of several class representatives are barred by the statute of limitations; former employees have no standing; there are conflicts of interest among current and former employees, temporary and other employees, and supervisors and non-supervisors; the subjective element of hostile work environment discrimination prevents due process where the representatives' perceptions diverge from those of the putative class members; available defenses create conflicts as to claims that invoke different legal standards; proposed representatives who have perjured themselves and been convicted of false statements have interests antagonistic to the alleged interests of a class; plaintiffs whose claims present unique fact patterns and circumstances are inadequate representatives; disciplinary work records create a conflict between would-be representatives and putative class members; preoccupation with retaliation claims renders plaintiffs inadequate class representatives; plaintiffs who fail to state a claim and who have been recruited are not adequate class representatives; and plaintiffs have not consistently protected the interests of the class.

In addition, defendant argues that plaintiffs cannot demonstrate that the class of persons affected is so numerous as to make joinder impracticable and that anecdotal allegations of harassment do not demonstrate numerosity. Defendant also argues that plaintiffs fail to demonstrate that there are questions of law or fact common to the proposed class. Defendant contends that the subjective element of a hostile environment claim weighs against commonality, plaintiffs are not in the same objective environment, plaintiffs have not shown that there are common issues of discrimination in terms, conditions or privileges of employment, and retaliation claims are inherently unsuitable for certification. Defendant also alleges that plaintiffs' claims are not typical of those of a class because the incidents alleged and the employer's response are not typical. Defendant asserts that certification under Rule 23(b)(3) is not appropriate because common issues do not predominate and the case is not manageable as a class action, and certification under Rule 23(b)(2) is not appropriate because monetary relief is the predominant form of relief sought. Finally, defendant contends that scientific evidence shows that the alleged incidents of harassment are isolated and the organizational climate does not promote or tolerate sexual harassment.

## IV. Undisputed facts

The following facts are undisputed:

1. Defendant American Showa, Inc. (Showa) is a company located in Blanchester, Ohio, which specializes in the production and assembly of shock absorbers, power steering units, and a variety of other products.

2. The class representatives are women who worked at Showa's Blanchester plant since January 1, 1994.

3. Approximately one-half of the individuals employed at the plant are women. Since 1994, hundreds of women have worked at the plant.

4. Plaintiff Victoria Elkins went on disability leave in September 2001 and has testified to a lack of knowledge of

any act of harassment of a sexual nature at the plant occurring after May 12, 1998.

5. Plaintiff Holly Lewis was a temporary or contract worker at the plant.

## V. Applicable law

### A. Rule 23 requirements

The party seeking certification of a class bears the burden of establishing the elements of a class action. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1086 (6th Cir.1996). The district court must conduct a "rigorous analysis" of whether the Rule 23 prerequisites are met before certifying a class. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23. *American Medical Systems*, 75 F.3d at 1079 (citations omitted).

Rule 23(a) sets forth four prerequisites which the party seeking certification must satisfy before a class can be certified. They are (1) the class must be "so numerous that joinder of all members is impracticable", (2) there must be "questions of law or fact common to the class", (3) "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class", and (4) "the representative parties [must] fairly and adequately protect the interests of the class." These four prerequisites are generally referred to as numerosity, commonality, typicality and adequacy of representation.

With respect to the numerosity requirement, although "the class must be sufficiently defined so that potential class members can be identified, the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action." *Bremiller v. Cleveland Psychiatric Inst.*, 898 F.Supp. 572, 576 (N.D.Ohio 1995)(citing *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.1976)).

There need only be a single issue common to all members of the class to satisfy the commonality requirement. *American Medical Systems*, 75 F.3d at 1080 (citing *1 New-berg on Class Actions*, § 3.10, at 3–50 (3d ed.1992)). The mere fact that questions peculiar to each individual member of the class remain after common questions as to defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible. *Id.* (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988)). Not every common question will suffice, however, to establish commonality. The common issue must be such that its resolution will advance the litigation. *Sprague v. G.M. Corp.*, 133 F.3d 388, 397 (6th Cir.1998); *Bacon v. Honda of America Mfg., Inc.*, 205 F.R.D. 466, 476 (S.D.Ohio 2001)(Graham, J.).

■ Commonality cannot exist where plaintiffs' claims "do not relate to general policies and practices which are allegedly discriminatory, but rather to individualized claims of discrimination which could not possibly present common questions of law or fact sufficient to justify class action treatment." *Rosenberg v. University of Cincinnati*, 654 F.Supp. 774, 777 (S.D.Ohio 1986), *modified*, 118 F.R.D. 591 (S.D.Ohio 1987)(Rice, J.). Conclusory allegations of commonality or across-the-board discrimination will not satisfy the burden of proof on certification. *Bacon*, 205 F.R.D. at 477. In the context of a class action alleging employment discrimination, courts have considered the following factors in determining whether the commonality requirement is satisfied: (1) the nature of the unlawful employment practice charged and whether it peculiarly affects a few employees or has class-wide impact; (2) the uniformity or diversity of the employment practices, considering work force size, the number of facilities, the variety of employment conditions, occupations and work activities; (3) the uniformity or diversity of the class membership and whether the alleged discriminatory treatment involves common questions; (4) the nature of the defendant's management organization as it relates to the degree of centralization and uniformity of employment and personnel policies and practices; and (5) the length of time the claims span and whether similar conditions prevailed throughout that period. *Id.* (citing

*Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 41 (N.D.Cal.1977)).

Because the commonality and typicality requirements tend to merge, "a finding of commonality will ordinarily support a finding of typicality." *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364. A plaintiff's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *American Medical Systems,* 75 F.3d at 1082 (citing *1 Newberg,* § 3–13, at 3–76 (footnote omitted)). The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named class members and those of other class members. *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (citations omitted); see also *Senter,* 532 F.2d at 525 n. 31 ("To be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.") The typicality requirement determines whether a sufficient relationship exists between the named plaintiffs' injuries and the conduct affecting the class such that the Court properly may attribute a collective nature to the challenged conduct. *American Medical Systems,* 75 F.3d at 1082.

The Sixth Circuit has summarized the typicality standard in this manner: "[A]s goes the claim of the named plaintiff, so go the claims of the class." *Sprague,* 133 F.3d at 397. Typicality is not present where a "named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Bacon,* 205 F.R.D. at 479 (citing *Sprague,* 133 F.3d at 399).

Adequate representation is essential to a class action because without it there can be no preclusive effect of the judgment. 18 Charles Alan Wright, et. al, *Federal Practice and Procedure,* Section 4455 (1981). To assess the adequacy of representation, the Court must consider whether the class representatives will "fairly and adequately protect the interests of the class." There are two prongs to this inquiry: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter,* 532 F.2d at 525 (citing *Gonzales v. Cassidy,* 474 F.2d 67, 73 (5th Cir.1973)). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." *Bacon,* 205 F.R.D. at 481 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

Once the prerequisites of Rule 23(a) are satisfied, plaintiffs must also demonstrate that they fall within at least one of the subcategories of Rule 23(b). For plaintiffs to satisfy Rule 23(b)(3), the Court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The pertinent considerations listed under this subsection include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Bacon,* 205 F.R.D. at 486. The predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement. *Id.* (citing *Amchem Products,* 521 U.S. at 623–24, 117 S.Ct. 2231). Where a finding of liability requires separate proof for each plaintiff, liability is not a predominate issue. *Id.* (citing *Mertens v. Abbott Laboratories,* 99 F.R.D. 38, 41 (D.N.H.1983)). The prevalence of individual questions likewise weighs against a finding of superiority. *Id.* (citing *American Medical Systems,* 75 F.3d at 1085).

Subsection 23(b)(2) is satisfied where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The United States Supreme Court has cited as "prime examples" of (b)(2) class actions civil rights cases against parties charged with unlawful, class-based discrimination. *Amchem Products,* 521 U.S. at 614, 117 S.Ct. 2231.

In *Bacon* and in *Hoffman v. Honda of America Mfg., Inc.,* 191 F.R.D. 530, 536 (S.D.Ohio 1999)(Rice, J.), the Court analyzed the issue of whether common issues predominated as to the relief sought. The Court in each case recognized that certification under 23(b)(2) in an action in which both injunctive relief and monetary damages are sought turns on whether money damages constitute the predominate type of relief requested. The Court in *Hoffman* determined that whether the final relief sought relates predominantly to money damages depends upon the facts and circumstances of the particular case, with one factor being whether the monetary damages requested are incidental to injunctive and declaratory relief, i.e., whether they would automatically flow to the class as a whole once liability was established. The Court in both *Bacon* and in *Hoffman* acknowledged, but did not adopt, the following description of incidental damages as propounded by the Fifth Circuit in *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 414 (5th Cir.1998):

> [T]he recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by defini-

tion, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

## B. Rule 23 hearing/evidence

In determining whether to certify a class, the Court must not consider the merits of the action. *In re Cincinnati Radiation Litigation,* 187 F.R.D. 549, 551 (S.D.Ohio 1999)(Beckwith, J.)(citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). The question underlying class certification is "not whether ... the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140. On the other hand, "the existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action." *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 877, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

For purposes of a class certification motion, the Court must accept the allegations of the complaint as true. *Cincinnati Radiation,* 187 F.R.D. at 552 (citations omitted). The Court may consider reasonable inferences drawn from the facts before it. *Id.* (citing *Senter,* 532 F.2d at 523). The district judge may consider inferences drawn from facts before him/her at an early stage in the proceedings in determining whether the class is sufficiently numerous to make joinder impracticable. *American Medical Systems, Inc.,* 75 F.3d at 1079 (citing *Senter,* 532 F.2d at 523 n. 24). A court should not, however, merely "rubberstamp" plaintiffs' assertions of numerosity but should examine the specific facts of the case to determine whether there exists a sufficient number of plaintiffs as to whom the requirements of Rule 23 have been met. *Id.*

A hearing prior to class certification is not mandatory but "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). "Maintainability may be determined

by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide .... The parties should be afforded an opportunity to present evidence on the maintainability of the class action." *Id.* (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974)).

## C. Hostile environment

A Title VII violation occurs when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' [*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)] that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' *id.*, at 67, 106 S.Ct. 2399 (internal brackets and quotation marks omitted)." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The environment must be one both that a reasonable person would find hostile or abusive and that the victim herself subjectively perceives to be abusive. *Id.* at 21–22, 114 S.Ct. 367. A court faced with a hostile environment claim must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.; Jackson v. Quanex Corporation*, 191 F.3d 647, 658 (6th Cir. 1999). The issue is whether the alleged incidents taken together, as opposed to each incident of harassment standing alone, is sufficient to sustain a cause of action. *Jackson*, 191 F.3d at 659 (citing *Williams v. G.M. Corp.*, 187 F.3d 553 (6th Cir.1999)).

Hostile environment employment cases distinguish between harassment by supervisors and harassment by co-workers. *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872, 873 (6th Cir.1997)(citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803–04 (6th Cir.1994)). An employer is vicariously liable for an actionable hostile environment created by a supervisor with immediate or successively higher authority over the employee. *Jackson*, 191 F.3d at 663 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). Where no tangible employment action is taken, an employer may raise an affirmative defense to supervisor harassment by proving by a preponderance of the evidence that (1) it exercised reasonable care to prevent and correct promptly the harassing behavior, and (2) the employee unreasonably failed to take advantage of corrective opportunities provided by the employer. *Id.*

To prevail on a sexual harassment claim against a co-worker, a plaintiff must show that (1) she is a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action. *Id.; Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829–830 (6th Cir.1999). An employer may be held directly liable for a co-worker's acts if the plaintiff can show that (1) the employer knew or should have known of the conduct, and (2) its response manifested indifference or unreasonableness. *Jackson*, 191 F.3d at 663 (citing *Blankenship*, 123 F.3d at 873). The appropriateness of the corrective action must be determined on a case-by-case basis and depends on the frequency and severity of the alleged harassment. *Blankenship*, 123 F.3d at 872. When an employer responds to charges of sexual harassment by a co-worker, the employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known. *Id.* at 873. "The act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment." *Id.*

## D. Retaliation

To prove a claim of retaliation, plaintiff must demonstrate that (1) she engaged in protected activity; (2) the exercise of her civil rights was known by defendant; (3) defendant thereafter took adverse employment action; and (4) a causal connection

exists between the protected activity and the adverse employment action. *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588–89 (6th Cir.1998); see also *Thatcher v. Goodwill Industries of Akron*, 117 Ohio App.3d 525, 534–35, 690 N.E.2d 1320 (1997); *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.*, 99 Ohio App.3d 396, 402, 650 N.E.2d 950 (1994). To establish a causal connection, plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had plaintiff not filed a discrimination charge. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). Evidence that defendant treated the plaintiff differently from similarly-situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *Id.* Once plaintiff establishes a prima facie case of retaliation, the burden is on defendant to establish a legitimate reason for the adverse action, which plaintiff may rebut by producing credible evidence of pretext. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir.1997); *Jackson v. Pepsi–Cola, Dr. Pepper Bottling Co.*, 783 F.2d 50, 54 (6th Cir.1986).

## VI. Opinion

### A. Motion for a view

Defendant requests the Court to view its Blanchester manufacturing facility (the plant) so that the Court may familiarize itself with the plant layout and gain a better understanding of the evidence submitted on the issue of class certification. Having heard extensive testimony and arguments on the class certification issue, the Court determines that a view of the plant would not further assist the Court in resolving the issue. Accordingly, defendant's motion for a view of the plant is denied.

### B. Admissibility of expert witness reports

In an effort to establish that class certification is not appropriate, defendant has submitted a report of a survey of females employed at defendant's Blanchester facility conducted by Louise Fitzgerald, Ph.D. In response, plaintiff has submitted reports by James E. Gruber and Deborah E. Knapp to refute the findings presented by Dr. Fitzgerald. Plaintiffs have also submitted a report by Susan J. Feister, M.D. in support of their motion. The parties have moved to strike the reports submitted by the opposing side. Those motions have been referred to the United States Magistrate Judge, who has not yet heard or ruled on the motions.

The Court has heard the testimony of the experts and has reviewed their reports. The Court notes that it has serious concerns regarding the soundness of the experts' methodology and their results. The Court need not, however, address its concerns and the admissibility of the reports at this juncture. The Court finds that the reports add little to the documentary evidence, affidavits, and deposition testimony before the Court. That evidence convinces the Court that certification of a class is not appropriate in this case. Accordingly, the Court finds that the motions seeking to strike the reports need not be resolved in conjunction with the class certification motion. The Court will therefore deny the motions without prejudice to resubmission should the parties wish to rely on the expert reports during the course of the proceedings on the individual plaintiffs' claims.

### C. The Court declines to certify a class

The Court has reviewed the extensive record developed on the class certification issue, the transcript of the class certification hearing, the parties' arguments, and the cases cited by the parties in support of their respective positions. For the reasons stated below, the Court finds that plaintiffs have failed to meet their burden under *American Medical Systems*, 75 F.3d 1069, of proving that class certification is proper in this matter.

#### 1. Plaintiffs have not established the prerequisites for a class action under Rule 23(a)

##### a. Numerosity

■ The first prerequisite of Rule 23(a) that plaintiffs must satisfy is numerosity. Plaintiffs seek to certify a class of "all women who worked at defendant's Blanchester, Ohio facility at any time from January 1, 1994 to

the present". If the class is limited to individuals who worked at the plant during that period who actually have claims for sexual harassment which they wish to pursue, then it is questionable whether plaintiffs can satisfy the numerosity requirement. There are five plaintiffs who are currently named in the lawsuit. Although plaintiffs have referred to a class of twelve plaintiffs and have represented to the Court that they intend to file a motion to add several named plaintiffs, they have not done so to date. No individuals other than the named plaintiffs and possibly the seven plaintiffs who purportedly wished to intervene in the action have demonstrated an interest in participating in the class action. This is despite the fact that the lawsuit has been pending for over two years, testimony at the class certification hearing established that the existence of the lawsuit in apparently well-known in the small community of Blanchester, and counsel for plaintiffs have publicized this action and have sought to enlist additional named plaintiffs. Moreover, the evidence offered in support of class certification, including the contents of 46 complaints of alleged sexual harassment filed by female employees at the plant together with deposition testimony and affidavits, does not demonstrate that the number of women who actually believe that they have been subjected to a hostile work environment at the Blanchester plant and would be interested in pursuing a claim is so large that joinder of their claims in one action would be impracticable.

Notwithstanding the Court's concerns as to whether the number of individuals who actually have sexual harassment claims is large enough to satisfy the numerosity requirement, the Court will accept the class definition proffered by plaintiffs for purposes of this motion. A class of all women who worked at the Blanchester plant during the proposed class period clearly satisfies the numerosity requirement, as that number is indisputably in the hundreds. The Court therefore finds that the class as defined by plaintiffs satisfies the numerosity requirement.

### b. Adequacy

Defendant's challenges to the adequacy of class counsel are not well-taken. Current class counsel are clearly qualified to litigate a class action of this nature and have demonstrated their willingness to diligently pursue the claims of the putative class members.

The Court does have concerns, however, about the adequacy of the named class representatives. First, the Court questions whether the named plaintiffs, apparently none of whom occupied supervisory positions, have a common interest with female supervisory personnel. Although plaintiffs assert that supervisory and non-supervisory personnel do not have conflicting interests because it is defendant who must be held liable to plaintiffs rather than the individual supervisors, it appears to the Court that conflicts could arise. For instance, supervisors who may be at fault for failing to address harassment complaints brought to their attention may have an interest in defending their actions or their inaction, even though it is the employer who would ultimately be held liable. Second, the fact that only two named plaintiffs remain employed by defendant could lead to plaintiffs placing an undue emphasis on damages rather than focusing on obtaining an injunction against current practices. The Court will, however, put aside these concerns and address the remaining requirements for a class action because the Court finds that even if the named plaintiffs are adequate class representatives, their claims fail to satisfy the prerequisites of commonality and typicality.

### c. Commonality

Plaintiffs allege that the following questions of law and fact are common to the class: (1) Was the environment at the plant hostile? (2) Did defendant know that it was hostile? (3) Did defendant take proper steps to remedy the environment?

As to the first alleged common issue, plaintiffs contend that the answer to the question of whether the environment at the plant was hostile will be the same for all those individuals who are in the environment. The Court disagrees. Whether an individual was subjected to a hostile work environment is a

highly fact-intensive inquiry which requires consideration of the frequency, severity, and nature of the conduct, including whether it was physically threatening or humiliating or a mere offensive utterance. Plaintiffs have failed to offer evidence which establishes that the plant-wide environment was hostile. Rather, the evidence offered by plaintiffs demonstrates that the factors to be considered varied within the plant and differed for the various female employees. The evidence fails to show a common pattern or practice, or an equally egregious level, of sexual harassment among the various areas of the plant, among the employees supervised by different supervisors and working with different co-workers, and among the employees on different shifts. The evidence presented by plaintiffs, if believed, illustrates that female employees have been subjected to sexual harassment of varying degrees which may or may not support a hostile environment claim. Some named plaintiffs have presented disturbing evidence of severe and pervasive sexual harassment which they endured and which, if proven, establishes that they were subjected to a hostile work environment. On the other hand, several complaints made by other female workers relate incidents which were either isolated or which cannot be characterized as harassment of a sexual nature or harassment based on gender, and are therefore insufficient to establish that those individuals were subject to a hostile work environment.

Given the variations in the frequency and the severity of the behavior to which different female workers were subjected, the Court must conclude that commonality is lacking. Some individuals may be able to establish a hostile environment with respect to the area of the plant in which they worked which was created by the particular co-workers and/or supervisors with whom they worked on their particular shifts. Other individuals on different shifts who worked with different co-workers and supervisors may not have been subjected to a hostile work environment even within the same area of the plant. Thus, plaintiffs have not established that there is a common question of fact as to whether the work environment at the Blanchester plant was a hostile environment for the women who worked there over the course of the class period. The existence of a common question of law (all plaintiffs bring their claims under a hostile environment theory) does not suffice to establish commonality for purposes of certifying a class since the existence of that common legal theory does nothing to advance the litigation.

Plaintiffs likewise have not shown that the issues of whether defendant knew that the work environment at the plant was hostile and whether defendant took steps to remedy the problem are common to the class. Plaintiffs allege that the core liability issue, whether defendant's failure to deal with harassment in an effective manner caused its female employees to suffer from a hostile work environment, can be proven without adjudication of any individualized issues. The Court again disagrees. First, as stated above, the issue of whether employees suffered from a hostile work environment is not common to the class. Second, the issue of whether defendant failed to deal with harassment in an effective manner is a determination which must be made on a case-by-case basis and which depends to a large extent on the frequency and severity of the conduct alleged by the complaining individual See *Blankenship*, 123 F.3d at 872 (citing *Bell v. Chesapeake & Ohio Railway Co.*, 929 F.2d 220 (6th Cir.1991)). The record discloses that defendant did investigate and respond to various complaints of sexual harassment and that its responses ranged from determining to take no action to terminating the offending employee, with some employees being suspended without pay and others being moved to different areas of the plant or to different shifts. While an individual plaintiff may certainly be able to establish that management did not attempt, or failed, to deal with her complaints in an effective manner, establishment of that fact as to one or several plaintiffs does not lend itself to the conclusion that as to the class generally, defendant had a practice of not effectively responding to complaints of sexual harassment. For these reasons, plaintiffs have not established common questions of law or fact sufficient to justify class action treatment of their hostile environment claims.

■ Plaintiffs' retaliation claims are even less conducive to class-wide adjudication based on a lack of commonality among such claims. Each plaintiff must individually prove the four elements of a retaliation claim. Defendant is entitled to establish as to each plaintiff a legitimate reason for any adverse action taken against that plaintiff, and each plaintiff must then have the opportunity to establish that the reason offered is pretextual. Plaintiffs have not identified any issues underlying their retaliation claims which may be resolved on a class-wide basis. Therefore, the prerequisite of commonality is not established as to plaintiff's retaliation claims.

#### d. Typicality

■ For many of the same reasons stated in connection with the Court's discussion of the commonality issue, the Court finds that the typicality prerequisite is not satisfied. The claims of many of the plaintiffs and putative class members do involve similar conduct. Accepting the testimony of plaintiffs and the complaints filed with management by putative class members as true, several women were subjected to suggestive or lewd comments and gestures and/or physical grabbing and groping, as well as unwanted sexual advances. Nonetheless, this is not a case where a named plaintiff who proved her own claim would prove anyone else's. The named plaintiffs have not shown that their claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members. As indicated above, whereas one named plaintiff may have been subjected to extensive harassment of an egregious nature in the form of repeated lewd remarks, sexual advances, or unwanted touching, another may have experienced an isolated harassing remark or have overheard sporadic comments about other females which, standing alone, would not be sufficiently severe or pervasive to support a discrimination charge. Similarly, whereas one plaintiff may herself have been the target of harassment, another female employee may have simply observed behavior directed toward another which would not necessarily support a sexual harassment charge by the non-targeted employee. For these reasons and those discussed above in connection with

the commonality requirement, the conduct complained of is too divergent and of such widely variant severity and duration to allow the Court to attribute a collective nature to it. Accordingly, the typicality requirement is not satisfied.

Similarly, the establishment of a retaliation claim by one plaintiff would not serve to establish any aspect of a retaliation claim brought by another plaintiff. Typicality is therefore lacking as to those claims.

#### 2. Plaintiffs have failed to establish the Rule 23(b)(3) requirements

##### a. Superiority

■ Assuming, arguendo, that plaintiffs were able to establish the prerequisites for a class action, the Court finds that the requirements of Rule 23(b)(3) are not satisfied. Plaintiffs allege that the superiority requirement is met because individual trials, as opposed to a class action, will require redundant proof by plaintiff after plaintiff of the same environment, the same facts indicating knowledge by defendant, and the same facts showing inaction by defendant in response to sexual harassment complaints. In an effort to avoid this scenario and promote efficiency, plaintiffs propose that one jury determine whether the environment of the Blanchester plant is hostile to reasonable female employees and that subsequent juries determine whether the environment was or is hostile to a particular female employee.

The Court finds that plaintiffs' suggestion is not well-taken and that a class action would not be superior to other available methods for a fair and efficient adjudication of the controversy before it. Even if it were possible for a jury to determine that the plant-wide environment was hostile to a reasonable female, this would not end the liability inquiry, a point which plaintiffs concede. Issues as to whether a given individual perceived the environment to be hostile would remain. The inquiry into an individual's perceptions would likely entail reviewing evidence previously presented to establish that the plant-wide environment was hostile to a reasonable female. The need to inquire into individual perceptions of the varying behav-

iors alleged by plaintiffs therefore makes a class action an inappropriate method by which to resolve the claims of female employees of the Blanchester plant.

Moreover, were plaintiffs able to establish a plant-wide hostile environment, various issues would remain as to defendant's liability for the actions of its supervisors and for the actions of an individual's co-workers. The evidence presented by plaintiffs discloses that some incidents of harassment went unreported and that defendant took action in response to other incidents which were reported, so that a blanket finding that defendant failed to appropriately respond is not permissible. For those employees able to establish that they were sexually harassed by a supervisor, individual determinations would have to be made as to whether defendant exercised reasonable care to prevent and promptly correct the behavior directed toward a particular employee, or whether each such employee unreasonably failed to take advantage of corrective opportunities which defendant provided. For those individuals who could establish that they were sexually harassed by co-workers, the focus of the inquiry would be on whether defendant appropriately responded to the charges of harassment. In such cases, individual determinations would have to be made as to whether defendant knew or should have known of the charged harassment and whether defendant failed unreasonably to take prompt and appropriate corrective action. Furthermore, damages determinations would need to be separately made for each of those plaintiffs who established their claims. The prevalence of these individual questions poses the danger that this litigation would ultimately "degenerate in practice into multiple lawsuits separately tried" (See Rule 23(b)(3) Advisory Notes to 1966 Amendments) and weighs against a finding of superiority. See *American Medical Systems*, 75 F.3d at 1085.

Moreover, if the jury were to determine that the plant-wide environment was not a hostile environment, members of the class who may have been subjected to a hostile environment in a particular area of the plant during a certain time period would be precluded from pursuing their claims. For this reason, a class action is not a fair method of resolving the sexual harassment claims of female employees at the Blanchester plant.

In sum, this is not a case where defendant's liability can be determined on a class-wide basis. The cause of the harm is not a single course of conduct which is identical as to each of the plaintiffs such that a class action "may be the vehicle best suited to resolve the controversy." See *Ilhardt v. A.O. Smith Corporation*, 168 F.R.D. 613, 619 (S.D.Ohio 1996)(Weber, J.)(citing *American Systems*, 75 F.3d at 1084). As in *Ilhardt*, no one set of operative facts establishes liability, and the affirmative defenses depend on facts peculiar to each plaintiff's case. Assuming, *arguendo*, that plaintiffs were able to establish a plant-wide hostile environment, the time to be saved by proceeding with a class action would be relatively insignificant. Therefore, the Court determines that "the economy to be achieved by class treatment of the stated issues is more than offset by the individualization of numerous issues relevant only to a particular plaintiff." See *id*. This is not a case where the class action device "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." See *Falcon*, 457 U.S at 155, 102 S.Ct. 2364. For these reasons, the Court concludes that a class action is not a superior method for adjudicating plaintiffs' claims.

### b. Predominance

■ The Court further determines that the questions of law or fact common to members of the class do not predominate over any questions affecting only individual members. Questions as to how individual class members perceived the environment at the Blanchester plant, whether defendant knew of the acts of harassment against a particular class member, whether defendant appropriately and promptly responded to acts of harassment against a particular class member, and the damages to which individual class members are entitled, predominate over the issue of whether a hostile environment existed at the Blanchester plant which would satisfy the reasonable person standard. As

in *Bacon*, "[t]here is no evidence or allegation that each class member was affected in the same manner by the multitude of allegedly discriminatory practices ... at issue in this case or that they suffered the same damages." 205 F.R.D. at 485. Subjective standards will have to be employed to determine the individual class members' damages since the individuals were exposed to different forms of harassment for varying periods of times. The need for repeated individualized inquiries demonstrates that the predominance requirement is not satisfied.

### 3. Plaintiffs have failed to establish Rule 23(b)(2) requirements

■ Examination of all the facts and circumstances of this case leads the Court to conclude that Rule 23(b)(2) requirements are not satisfied. As in the *Bacon* case discussed *supra*, plaintiffs in this action seek compensatory and punitive damages as permitted under state and federal law. Such damages would not flow automatically from a finding of liability. Rather, whether an individual plaintiff is entitled to an award of compensatory and/or punitive damages depends on whether defendant's unlawful actions caused emotional distress to that particular plaintiff and whether that plaintiff suffered mental or physical symptoms as a result of the harassment to which she was subjected. *Bacon*, 205 F.R.D. at 485–87. Punitive damages likewise must be determined based on the harassment inflicted on an individual plaintiff and the employer's response. *Id.* Thus, the damages sought are not in the nature of a group remedy but are dependent on individual circumstances and are not incidental to the injunctive relief requested. The fact that the class includes former employees and the majority of the named plaintiffs are themselves former employees who cannot obtain a remedy in the form of injunctive relief indicates that plaintiffs' claims are primarily for monetary damages. *Id.* at 486 (citing *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 162 (D.Kan.1996). Accordingly, certification of a 23(b)(2)) class is not appropriate.

### VII. Conclusion

Plaintiffs have failed to present evidence sufficient to convince this Court that class certification is appropriate in this case. While certain plaintiffs have presented persuasive evidence to support sexual harassment claims brought on their own behalf, the existence of a myriad of issues which must be resolved on a case-by-case basis as to each individual's claims makes the claims of the parties particularly ill-suited for class treatment.

Accordingly, plaintiffs' motion for class certification is **DENIED**. Defendant's motion for a view of the plant is **DENIED**. The order of reference to the United States Magistrate is **VACATED** with respect to the parties' motions relating to the class certification issue. Defendant's motions for a protective order (docs. 74 and 78) have been withdrawn and are therefore **DENIED** as moot. Plaintiff Coleman's motion for extension of time (doc. 85) is **DENIED** as moot. The parties' motions to strike expert reports and other evidence and to preclude the designation of certain individuals as expert witnesses and defendant's motion to file a surreply in opposition to plaintiffs' motion to strike report and testimony of Louise Fitzgerald, Ph.D. (docs. 80, 88, 98, 104, 105, 126 and 135) are **DENIED** without prejudice to re-submission in conjunction with the proceedings on the individual plaintiffs' claims.

**IT IS SO ORDERED.**